881 So.2d 316 (2004)
John L. WARD, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00286-COA.
Court of Appeals of Mississippi.
August 24, 2004.
*318 Gary Goodwin, Columbus, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. This case comes from the Circuit Court of Oktibbeha County, Mississippi, Honorable Lee J. Howard presiding. John L. Ward was tried and convicted of felony driving under the influence and was sentenced to five years in the custody of the Mississippi Department of Corrections as a habitual offender. After denial of his post-trial motions, Ward appeals raising the following issues:
I. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR BY INFORMING THE JURY DURING VOIR DIRE OF WARD'S PRIOR DUI OFFENSES, BY ALLOWING THE PRIOR OFFENSES TO BE A PART OF THE CASE-IN-CHIEF, AND BY FINDING THAT THEY CONSTITUTED MATERIAL ELEMENTS OF THE INDICTMENT, NOTWITHSTANDING RIGBY V. STATE

II. WHETHER THE TRIAL JUDGE COMMITTED ERROR BY OVERRULING WARD'S MOTION IN LIMINE

III. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR BY ALLOWING THE ARRESTING OFFICER TO TESTIFY AS TO THE RESULTS OF THE HORIZONTAL GAZE-NYSTAGMUS FIELD SOBRIETY TEST AND THE RESULTS OF THE PORTABLE INTOXILIZER BREATH TEST AS EVIDENCE OF WARD'S INTOXICATION
IV. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE OR WHETHER THE CUMULATIVE ERRORS SHOULD HAVE RESULTED IN A NEW TRIAL

STATEMENT OF FACTS
¶ 2. Late at night on November 5, 2001, the Starkville Police Department and the Oktibbeha County Sheriff's Department joined forces to conduct a roadblock at the intersection of Highway 82 and Highway 12 in Starkville, Mississippi. Officer Shawn Word and Deputy Archer Sallis stood behind the vehicles as they went through the checkpoint in order to check tags.
¶ 3. Officer Word noticed that a vehicle stopped abruptly in the middle of the highway about twenty-five yards before the roadblock. The vehicle was a dark-colored Jeep Cherokee Laredo. Once the Jeep stopped, Officer Word saw the driver's door open and a man with a pressed shirt and khakis run towards the back of the vehicle. Officer Word then saw the right rear passenger door open and a man with a purple hat run towards the front of the Jeep, enter the driver's seat, and shut the door. Officer Word was using his flashlight and testified that the area was fairly well lit.
¶ 4. Officer Word ordered the Jeep to pull over onto the shoulder of the road. As he did, a man driving a truck told Officer Word that he witnessed two males in the Jeep switch drivers. Apparently, the driver of the truck was traveling in the same direction as Ward and had to stop his vehicle since the Jeep was sitting in the middle of the highway.
¶ 5. By that time, Deputy Sallis had arrived and approached the driver's side of the Jeep. Officer Word approached the right rear passenger door where he asked *319 John Ward to step out of the vehicle. Officer Word asked Ward why they had switched drivers. Ward stated that he did not need to get a ticket for driving with a suspended license.
¶ 6. Officer Word testified that Ward's eyes were bloodshot and that he could smell alcohol on Ward's breath. Officer Word administered a horizontal gaze-nystagmus test and testified that Ward showed signs of intoxication. Officer Word also gave Ward a portable breath intoxilizer test and Ward registered above the legal limit.
¶ 7. Deputy Sallis administered a portable breath intoxilizer test on Ward's brother, James, because he was in the driver's seat and had pulled the Jeep onto the shoulder of the highway. The test revealed that James had also been drinking but he was under the legal limit.
¶ 8. Officer Word handcuffed Ward and placed him in the rear seat of the police car. Ward was then taken to the Oktibbeha County Sheriff's Department for an Intoxilizer test.
¶ 9. After arriving at the Sheriff's Department, Officer Word administered the "one leg stand" test and the "walk and turn" test and testified that Ward failed them both. Officer Word then administered the Intoxilizer test and Ward registered.12, which is over the legal limit.
¶ 10. Since this was Ward's third DUI offense within five years, he was indicted pursuant to Mississippi Code Annotated Section 63-11-30(2)(c) (Rev.1996). A trial was held in the Circuit Court of Oktibbeha County and the State offered Officer Word and Deputy Sallis as witnesses. After the State rested, Ward moved for a directed verdict but the trial judge denied this motion.
¶ 11. Ward then offered Mary Cook as his first witness. Cook testified that the Jeep in question belonged to her. Cook testified that Ward called her on the day in question and asked if he could borrow the Jeep. Ward indicated that his brother would be driving so she agreed. Later that evening, Ward and his brother came by and picked up the Jeep, and Cook testified that she saw Ward's brother drive it away. Cook testified that she did not know what happened after that.
¶ 12. The next witness called by the defense was Lewis Taylor. Taylor testified that he was sitting in the front passenger seat of the Jeep when Ward was arrested.
¶ 13. Ward then took the stand on his own behalf. Ward testified that his brother James was driving the Jeep on the night in question. Ward testified that he and his brother picked up the Jeep from Cook and drove to a bar. Ward testified that they stayed at the bar for about four hours where he consumed liquor and beer. Ward denied driving the vehicle. Ward stated that he was in the back seat, his brother was driving, and Taylor was sitting in the front passenger seat as they left the bar. Ward denied having any drinking problem. He stated that his two prior convictions were close together in time.
¶ 14. Finally, Ward's brother, James, was called to testify. He testified that he was driving the Jeep on the night in question. He testified that he had two beers that night at the bar. James stated that when they left the bar Taylor was in the front passenger seat and his brother was in the back seat. On cross-examination, James was asked about switching drivers and stated that he tried to drive home but his brother would not let him. On redirect, however, James restated that he was driving when they left the bar and that the vehicle never stopped so that the drivers could be changed. When asked for a reason *320 why he stopped in the middle of the highway, James stated that he was trying to avoid a DUI so he was looking for gum or candy to put in his mouth. James also stated that he was trying to light a cigarette, but it fell between his legs and he was trying to look for it.
¶ 15. After being instructed, the jury deliberated and ultimately returned a verdict of guilty. The State then moved to amend the indictment to show habitual offender status. The trial court granted the State's motion and two prior felony convictions were offered into evidence.
¶ 16. The trial court sentenced Ward to a term of five years in the custody of the Mississippi Department of Corrections as a habitual offender pursuant to Mississippi Code Annotated Section 99-19-81 (Rev.2000), without any possibility of an early release. Ward also received a fine of $5,000. After denial of his post-trial motion, Ward perfected this appeal.

LEGAL ANALYSIS

I. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR BY INFORMING THE JURY DURING VOIR DIRE OF WARD'S PRIOR DUI OFFENSES, BY ALLOWING THE PRIOR OFFENSES TO BE A PART OF THE CASE-IN-CHIEF, AND BY FINDING THAT THEY CONSTITUTED MATERIAL ELEMENTS OF THE INDICTMENT, NOTWITHSTANDING RIGBY V. STATE

¶ 17. Ward argues that evidence of his prior DUI convictions should have been precluded at his trial for felony DUI. In support of this argument, Ward relies on Strickland v. State, 784 So.2d 957, 961 (¶ 17) (Miss.2001), where the supreme court stated,
We note that there is no need for the State to introduce evidence of prior DUI convictions during the guilt phase of a trial. A better approach would be to introduce the prior convictions at the sentencing phase of the trial in order to prevent unfair prejudice to the defendant.
¶ 18. However, in Rigby v. State, 826 So.2d 694, 700 (¶ 10) (Miss.2002), the supreme court held that a defendant is not entitled to bifurcate the guilt phase of his trial in order to prevent the jury from learning of his prior DUI convictions until after they had deliberated on the most recent DUI charge. The court held that since prior DUI convictions are necessary elements of felony DUI, any other holding would preclude the State from proving an essential element of the crime and the circuit court would breach its duty to instruct the jury on all the essential elements of the crime charged. Rigby, 826 So.2d at 701 (¶ 13). In addition, the court held that bifurcation of the guilt phase of a felony DUI charge would be a direct violation of Rule 3.10 of the Uniform Rules of Circuit and County Court Practice which states that "[a]fter the jurors have retired to consider their verdict the court shall not recall the jurors to hear additional evidence." Rigby, 826 So.2d. at 700 (¶ 10).
¶ 19. Ward argues that Rigby never mentions Strickland, much less overrules it. As true as that may be, this Court has held that "[b]ecause the Strickland decision is a plurality decision on the point of whether a bifurcated trial is required, it has no precedential value." Watson v. State, 835 So.2d 112, 117 (¶ 14) (Miss.Ct.App.2003) (citing Moore v. State, 806 So.2d 308, 311(¶ 5) (Miss.Ct.App.2001)). Therefore, we find no plain error.
¶ 20. Moreover, like Watson and Moore, Ward has waived his right to raise this issue on appeal. In the instant case, the trial judge informed the jurors of the felony indictment against Ward and noted *321 that he had two prior DUI convictions within the last five years. The judge also told the jury the date and place of the two prior convictions. The trial transcript reveals that Ward made no objection to the introduction of this evidence. "Consequently, in addition to lacking merit, this issue is also procedurally barred from review by this Court." Watson, 835 So.2d at 117 (¶ 14) (citing Harris v. Lewis, 755 So.2d 1199, 1204 (¶ 15) (Miss.Ct.App.1999)).

II. WHETHER THE TRIAL JUDGE COMMITTED ERROR BY OVERRULING WARD'S MOTION IN LIMINE

¶ 21. Ward asked the trial court to prevent the State from questioning its witnesses about a statement an eyewitness made about Ward and his brother switching drivers. The trial judge denied Ward's motion in limine ruling that the eyewitness statement was both a present sense impression and an excited utterance, and therefore, was an exception to the hearsay rule under Mississippi Rules of Evidence 803(1) and 803(2).
¶ 22. On appeal, Ward argues that the eyewitness statement was inadmissible as a present sense impression because there was a lack of spontaneity and time for reflection. Ward also argues that the statement was inadmissible as an excited utterance because one driving through a roadblock and seeing two men switching drivers could not be so excited for such a statement to fit within the exception.
¶ 23. "[W]hen the trial judge's determination is largely based upon a finding of fact, and he applied the correct legal standards, his determination should not be overturned unless his findings of fact were clearly erroneous, as not being supported by substantial evidence." Morris v. State, 777 So.2d 16, 24 (¶ 29) (Miss.2000).
¶ 24. "A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Evans v. Clemons, 872 So.2d 23, 32 (¶ 39) (Miss.Ct.App.2003). It is based on the absence of opportunity for deliberation. Id."An excited utterance is defined as a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id."The rationale for this exception is that one caught in a sudden, startling event lacks the capacity for calm reflection, tending to make such statements reliable." Id.
¶ 25. In denying Ward's motion, the trial judge ruled that the statement was a present sense impression of the person observing the event at the time that it was occurring and the statement was made at the time of observation. The record indicates the Jeep that Ward was in came to an abrupt stop in the middle of Highway 82. The eyewitness was driving a truck on Highway 82 directly behind Ward and was forced to stop his vehicle once Ward stopped the Jeep. Officer Word testified that he was twenty-five yards away when he noticed the Jeep stopping and stated that he was near the hood of the Jeep by the time that the switch was complete. Officer Word immediately ordered the Jeep to pull over on the shoulder of the road. At that same time, the eyewitness told Officer Word that the drivers had switched places. At most, it was a matter of seconds between the time the eyewitness observed Ward's actions until he relayed what he saw to Officer Word. As a result, we find that the trial judge's finding was supported by substantial evidence.
¶ 26. Likewise, we cannot say that the trial judge was clearly erroneous in *322 labeling the eyewitness statement as an excited utterance. Ward argues that a person going through a roadblock cannot be said to possess the requisite excitement. We disagree. As noted above, the eyewitness was forced to come to an abrupt stop in the middle of the highway at night and then saw two men exit the Jeep in front of him and switch places while a police officer ran towards the Jeep with his flashlight on. As noted above, the out of court statement was spontaneous and made only seconds after the events happened. Therefore, we find no merit to this issue.

III. WHETHER THE TRIAL JUDGE COMMITTED PLAIN ERROR BY ALLOWING THE ARRESTING OFFICER TO TESTIFY AS TO THE RESULTS OF THE HORIZONTAL GAZE-NYSTAGMUS FIELD SOBRIETY TEST AND THE RESULTS OF THE PORTABLE INTOXILIZER BREATH TEST AS EVIDENCE OF WARD'S INTOXICATION
¶ 27. Ward argues that the horizontal gaze-nystagmus test and the portable breath test are admissible only for purposes of establishing probable cause. Since Ward failed to make a contemporaneous objection, he relies on the plain error doctrine to raise the issue on appeal.
¶ 28. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Palmer v. City of Oxford, 860 So.2d 1203, 1207 (¶ 10) (Miss.2003). In the instant case, Officer Word testified that he used the test only as indicators of Ward's impairment. Officer Word testified that Ward failed the portable Intoxilizer breath test but did not state the result in numerical terms. Officer Word even admitted that those tests were used to show probable cause for arrest until an Intoxilizer test could be administered at the Sheriff's Department. We find no plain error. Therefore, this issue is procedurally barred.

IV. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE OR WHETHER THE CUMULATIVE ERRORS SHOULD HAVE RESULTED IN A NEW TRIAL
¶ 29. Ward argues that he is entitled to a new trial because the jury's verdict was against the overwhelming weight of evidence. "[I]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice." Doolie v. State, 856 So.2d 669, 671 (¶ 7) (Miss.Ct.App.2003).
¶ 30. The State's evidence consisted of testimony from Officer Word and Deputy Sallis. Officer Word is a trained DUI officer who was certified to administer all of the tests that Ward received. Officer Word testified that Ward's eyes were bloodshot and his breath smelled like alcohol. Ward admitted to drinking liquor and beer on the night in question. He failed the horizontal gaze-nystagmus field test and the portable breath Intoxilizer test. Ward also failed the two field tests and the Intoxilizer test that were conducted at the Sheriff's Department. As a result, it seems clear that Ward was under the influence of alcohol.
¶ 31. The critical issue is whether Ward was driving the Jeep as it approached the roadblock. Ward argues that he was not driving the Jeep that night and all of his witnesses attempt to corroborate this point. However, "the jury is the judge of the weight and credibility of testimony and *323 is free to accept or reject all or some of the testimony given by each witness." Id. Officer Word testified that Ward and his brother switched places. In addition, his testimony was corroborated by Deputy Sallis and an unnamed eyewitness. This act of switching drivers was an indication to the jury that Ward was aware of his condition and sought to conceal it from the police. Any claim that Ward's brother was driving the Jeep at all pertinent times that night was properly considered and resolved by the jury. Therefore, this Court cannot hold that an unconscionable injustice would occur by allowing the verdict to stand.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF FELONY DUI AS AN HABITUAL OFFENDER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ. NOT PARTICIPATING.