977 So.2d 1201 (2007)
Robert Lee MOSS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02340-COA.
Court of Appeals of Mississippi.
September 25, 2007.
Rehearing Denied January 15, 2008.
*1206 Phillip W. Broadhead, University, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. Robert Lee Moss, Jr. was convicted in the Clarke County Circuit Court of aggravated assault and rape and sentenced as a habitual offender to serve two life terms of imprisonment in the custody of the Mississippi Department of Corrections. Following his conviction, Moss moved the lower court to grant him a new trial; however, his motion was denied. Moss now appeals the lower court's denial of his post-trial motion, seeking review of several issues. Finding no error, we affirm.

FACTS
¶ 2. On the evening of July 4, 2004, V.M., a twenty-six year old female, was hosting a small get-together at her home when Moss showed up at her house uninvited and joined the party.[1] Moss and V.M. had known each other since childhood and dated briefly in the past when V.M. was approximately sixteen or seventeen years of age, but V.M. testified she had not spoken to or seen Moss in the five years preceding that evening. Sometime around midnight, V.M.'s guests began leaving, but Moss stayed behind and helped V.M. cover her patio chairs. V.M. testified that she told Moss that she was getting ready to go to bed and she then went inside, believing that Moss had departed. V.M. testified that she proceeded to the back door to let her dog into the house, but when she reached her back door, Moss entered her house, appeared behind her and placed a knife at her neck. Testimony at trial adduced that Moss, thereafter, proceeded to threaten and cut V.M. with the knife as he sexually assaulted and raped her.

DISCUSSION
I. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN OBJECTIONS MADE BY DEFENSE COUNSEL THAT LED TO MULTIPLE INADMISSIBLE HEARSAY STATEMENTS BEING ADMITTED INTO EVIDENCE FOR THE SOLE PURPOSE OF BOLSTERING THE TESTIMONY OF THE ACCUSER?
¶ 3. The first issue presented generally concerns the admissibility of testimony of three of the State's witnesses detailing the statements made to them by V.M. the day after the attack. After V.M. testified and was cross-examined regarding the attack and her actions afterwards, the State called V.M.'s boyfriend, boss and cousin to testify. Each of these witnesses described *1207 V.M.'s physical appearance and demeanor the day after the rape, and testified that V.M. told them she was raped. Moss objected to each of the witnesses' testimony regarding V.M.'s statements to them; however, the trial judge overruled the objection in each instance, finding that the statements were not introduced for the purpose of proving the truth of the matter asserted. Moss now argues that the trial court erred in allowing these witnesses to testify regarding their conversations with V.M. because this testimony was inadmissible hearsay.
¶ 4. The admissibility of evidence is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules of Evidence, and it will not be found in error unless the trial court has abused its discretion. Harris v. State, 861 So.2d 1003, 1018(¶ 41) (Miss.2003). "Such error will warrant reversal only when the abuse of discretion has resulted in prejudice to the accused." Id.
¶ 5. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter" and is generally not admissible at trial. M.R.E. 801(c); M.R.E. 802. One exception to the general rule barring hearsay testimony is found in Mississippi Rule of Evidence 801(d)(1)(B). Rule 801(d)(1)(B) permits the introduction of a prior consistent statement if (1) the declarant has testified at the trial and been subject to cross-examination, (2) the testimony of the witness as to the prior statement was consistent with the declarant's testimony as a witness, (3) the prior statement was offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.
¶ 6. At the time that the statements of which Moss complains were introduced during trial, the declarant, V.M., had already testified that Moss raped hen, and her testimony was subject to cross-examination. After V.M. testified, the State called V.M.'s boyfriend, boss and cousin to testify. Each of these witnesses confirmed that V.M. told them she was raped. Thus, the first two requirements of the rule are satisfied so as to allow the introduction of the V.M.'s prior consistent statements.
¶ 7. Lastly, the party seeking to introduce the prior statement must offer the statement to counter the opposing party's assertion that the declarant is untruthful. Our discussion of this issue turns to Moss' pre-trial motion requesting the introduction of evidence that the encounter between Moss and V.M. was consensual and part of an ongoing sexual relationship. Within his defense motion, Moss stated that the purpose of entering the affirmative defense that he and V.M. participated in consensual sex was to attack the credibility of V.M. and to show that he had sexual intercourse with V.M. on a number of occasions prior to the evening of the alleged rape. Furthermore, at trial, the defense questioned V.M. regarding her former relationship with Moss in attempts to establish that the sexual encounter on the evening of July 4th was consensual, and thus that V.M. was untruthful while testifying against him on the stand. The purpose of allowing the statements of the witnesses was to rebut Moss' express and implicit accusations that V.M. was untruthful about her allegations of rape. Through the introduction of these prior consistent statements, the prosecution sought to demonstrate that V.M.'S testimony at trial was consistent with the version of events she gave to her boyfriend, boss and cousin the day after the attack.
¶ 8. Each of the prerequisites of Rule 801(d)(1)(B) were satisfied so as to remove the witnesses' statements from the category *1208 of impermissible hearsay. Therefore, because evidence of a prior consistent statement is not hearsay if the statement fits the definition of Rule 801(d)(1)(B), such a statement would ordinarily be very "relevant evidence" as defined in Rule 401 of the Mississippi Rules of Evidence and thus, the statement becomes admissible under Rule 402. We find that the trial judge properly allowed the State to elicit these statements of the witnesses in order to rebut Moss' defense of consensual sex. Accordingly, we hold that the trial court did not err in admitting testimony from V.M.'s boyfriend, boss and cousin regarding V.M.'s prior consistent statements.
¶ 9. We must note, however, that even if we were to find that the statements made by the witnesses were hearsay statements, we would have to find that the introduction of those statements was harmless error, as they were cumulative. V.M. was the first witness the State called. During her direct examination, V.M. testified that she told her boyfriend, boss and cousin that she was raped or violated. The defense never objected to V.M.'s testimony regarding these statements. Then, after V.M. testified, the State called V.M.'s boyfriend, boss and cousin to the stand. Each of them testified that V.M. told them the day after the rape that she had been raped or violated. It is well-established that "[u]nless timely and specific objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal." Hall v. State, 691 So.2d 415, 418 (Miss.1997). In light of the fact that V.M. previously testified, without objection, to having told her boyfriend, boss and cousin that she was raped, their later testimony repeating the same statements is harmless, as the testimony is merely cumulative.
II. WHETHER THERE WAS PLAIN ERROR DUE TO PROSECUTORIAL MISCONDUCT, INEFFECTIVE ASSISTANCE OF COUNSEL, AND THE TRIAL COURT'S FAILURE TO CORRECTLY APPLY MISSISSIPPI RULE OF EVIDENCE 609, INCLUDING CONDUCTING A BALANCING TEST ON THE RECORD AND/OR GIVING A LIMITING INSTRUCTION WHEN THE STATE IMPROPERLY ELICITED THE APPELLANT'S CROSS-EXAMINATION AND THE STATE'S CLOSING ARGUMENT?
¶ 10. Moss asserts that the prosecutor improperly elicited evidence during his cross-examination of Moss regarding his prior convictions of aggravated assault and assaulting a police officer, then repeated Moss' answers regarding his prior convictions during summation, thereby causing him severe reversible prejudice. Moss argues that Mississippi Rule of Evidence 609(a)(1)(B) prohibits the introduction of such evidence. Moss also asserts that the trial court abused its discretion by failing to perform an on-the-record balancing test pursuant to Rule 609 to determine whether the probative value of the testimony regarding the prior crime substantially outweighed the prejudice to Moss under Rule 403. However, Moss admits that no contemporaneous objection was made when he was cross-examined regarding his prior convictions. Because there was no objection to the trial judge's allowance of such questioning, along with other trial court errors, Moss relies on the argument of plain error warranting reversal. Moss further argues that he was entitled to a limiting instruction regarding the admission of his prior convictions. His lawyer's failure to object to the introduction of such evidence and failure to request a limiting instruction forms the basis of his claim of ineffective assistance of counsel.
*1209 ¶ 11. We begin our discussion by pointing out that the issue regarding Moss' prior convictions was not raised by Moss in his motion for a new trial. It is well settled that "[t]he assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994). Because Moss did not raise the issue of the admittance of his prior convictions in his motion for a new trial it is this Court's finding that Issue II is procedurally barred. Notwithstanding the procedural bar, we address the merits of the issue, addressing several Sub-issues separately.
A. Admission of the Prior Conviction under 609(a)(1)(B)
¶ 12. Evidence of Moss' prior conviction was admitted when Moss took the stand in his own defense. Moss argues that the testimony regarding his prior convictions was improperly elicited from him because the trial judge failed to first perform an on-the-record analysis as required by Peterson v. State, 518 So.2d 632 (Miss.1987), before allowing such testimony to be introduced. He asserts that the evidence of his prior conviction substantially outweighed its probative value under the balancing test mandated by Mississippi Rule of Evidence 609(a)(1)(B), and therefore its admission constitutes such unfairness that he is warranted a new trial.
¶ 13. Our review of the admissibility of evidence is limited. The admissibility of evidence is within the discretion of the trial court, and absent abuse of that discretion, the trial court's decision regarding the admissibility of evidence will not be disturbed on appeal. McCoy v. State, 820 So.2d 25, 31(¶ 15) (Miss.Ct.App.2002). When the trial court stays within the parameters of the Rules of Evidence, the decision to exclude or admit evidence will be afforded a high degree of deference. Id. Also, "the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account." Id. at 31(¶ 15) (quoting Jackson v. State, 594 So.2d 20, 25 (Miss.1992)).
¶ 14. "The general rule is that evidence of a crime, other than the one for which the accused is being tried, is not admissible." Palmer v. State, 939 So.2d 792, 795(¶ 8) (Miss.2006). However, Mississippi Rule of Evidence 609(a)(1)(B) allows the introduction of prior convictions for the limited purpose of attacking the credibility of the witness. The rule requires that before evidence of a prior conviction is introduced for the purpose of attacking the credibility of a witness, "the court [is to] determine[] that the probative value of admitting this evidence outweighs its prejudicial effect to the party." M.R.E. 609(a)(1)(B).
¶ 15. Our discussion of this issue necessarily involves the context in which the cross-examination of Moss developed. Prior to his trial, Moss entered an affirmative defense alleging that the intercourse between Moss and V.M. was consensual. At trial, Moss testified during direct examination that he and V.M. had consensual intercourse and had been having an ongoing series of "one-night stands" for many years after he ended their relationship. When Moss was questioned during cross-examination about the former relationship and its end, the following colloquy occurred:
Prosecutor: And you said that you broke up with [V.M.] in '96; is that right?
Moss: That's right.
Prosecutor: Is that the  for what reason did you break up with her in '96?
Moss: Because I had to.

*1210 Prosecutor: Because you had to. For what reason?
Moss: She had an attitude that I didn't like. She was bossy. She wanted to tell me what to do, when to do it, how to do it.
Prosecutor: Did you see her between '96 and 2001?
Moss: Well, when we broke up, I left out of town.
Prosecutor: For what reason?
Moss: I went to the restitution center in Pascagoula. I came back in July '96. And then from July to September, I was seeing her. And then in September of '96, I left and went to the penitentiary. I got out in 2000.
Prosecutor: What did you go to the penitentiary for?
Moss: For parole violation.
Prosecutor: For what crime?
Moss: For  it was simple assault on a police officer, state trooper.
Prosecutor: Is that all?
Moss: That's what I was on probation for, yeah.
Prosecutor: You didn't have another charge you served time on, too?
. . . .
Moss: It was accessory to aggravated assault.
. . . .
Prosecutor: All right. So you're not seeing her for this period of time didn't necessarily have anything to do with, at least according to your claim, that you were broke up. The fact of the matter is, you didn't see her because you were either in the Mississippi Department of Corrections Restitution Center or you were in the Mississippi Department of Corrections at Parchman, Mississippi; is that right?
. . . .
Prosecutor: Is the reason that you didn't see her because you were either in some MDOC facility, Mississippi Department of Corrections facility from November 13, 1996 until March 11, 2001?
Moss: Yes, that's correct.
¶ 16. "[W]here an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed another crime." Stewart v. State, 596 So.2d 851, 853 (Miss.1992). It is well established that if a defendant opens the door to the admission of otherwise inadmissible evidence, the State then may proceed to question further into the matter. Crenshaw v. State, 520 So.2d 131, 133 (Miss.1988); Washington v. State, 726 So.2d 209, 216(¶ 34) (Miss.Ct.App.1998). But, "[t]he impeachment evidence is admissible only for the purpose of impeaching credibility and may not be used for the purpose of establishing its truth." Bush v. State, 895 So.2d 836, 848(¶ 31) (Miss.2005) (citing Johnson v. State, 666 So.2d 499, 503 (Miss. 1995)). "The State is further limited in that its `impeachment privilege may not exceed the invitation extended.'" Bush, 895 So.2d at 848(¶ 31) (quoting Stewart, 596 So.2d at 853). However, "if a defendant opens the door to line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the "benevolent invitation to cross the threshold." Kolberg v. State, 829 So.2d 29, 56(¶ 56) (Miss.2002) (citing Randall v. State, 806 So.2d 185, 195 (Miss.2001)).
¶ 17. Normally, our review of the use of prior convictions for the purpose of impeachment arises in a context where a prosecutor introduces such evidence. In that instance, it has become trial court *1211 practice that before such evidence is allowed to be introduced against a defendant, the judge conducts a balancing test, considering the potential for prejudice against the probative value of the evidence, pursuant to the suggestions of Peterson. Bush, 895 So.2d at 848(¶ 30). However, we must note that our supreme court does not require on-the-record strict compliance with the Peterson factors. See Young v. State, 731 So.2d 1145, 1152 (Miss. 1999). In this case, however, we face a different set of circumstances.
¶ 18. The trial transcript reveals that Moss, himself, brought to light his previous convictions for aggravated assault and assaulting a police officer. Here, Moss opened the door to the admittance of his previous convictions by his testimony on direct examination that he "broke up" with the victim during 1996 and 2001, but that before then he had sexual access to the victim at his will. On cross-examination, the State then questioned whether he saw V.M. during the years of 1996 and 2001, in attempts to discredit Moss' former testimony that he had sexual access to V.M. at any time, even after their relationship ended. In response, Moss testified that he actually did not retain sexual access to V.M. because he "left out of town." It was at this point that the State gained the opportunity to delve further into Moss' response and' Moss volunteered that he was incarcerated during this time period. After this volunteering of information, the prosecutor was able to cross-examine Moss regarding his response and utilize Moss' response to build his closing argument. Consequently, at the time of Moss' introduction of his prior convictions, the trial judge had no opportunity to perform an analysis to determine whether to admit the evidence of Moss' prior convictions. It is for these reasons that we cannot consider the issue of the introduction of Moss' prior convictions on appeal. Therefore, we find that the trial judge did not abuse his discretion by allowing the State to question Moss about his prior conviction, after Moss volunteered such information.
B. Prosecutorial Misconduct
¶ 19. Moss complains of the prosecutor's use of his testimony regarding his prior criminal convictions, urging us to find prosecutorial misconduct. Specifically, he points to the prosecutor's mention of Moss' prior convictions during his closing argument.
¶ 20. The standard used in reviewing closing arguments is "whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Rushing v. State, 711 So.2d 450, 455(¶ 15) (Miss.1998) (quoting Taylor v. State, 672 So.2d 1246, 1270 (Miss. 1996)). In reviewing whether a prosecutor's closing remarks constitute reversible error, we are to employ a two-part test. Spicer v. State, 921 So.2d 292, 318(¶ 55) (Miss.2006). First, we review the remarks, and determine whether the remarks were improper. Id. If we find that the prosecutor's statements during summation were improper, then we analyze whether the remarks prejudicially affected the accused's rights. Id. "It must be clear beyond a reasonable doubt, that absent the prosecutor's comments, the jury could have found the defendant guilty." Id.
¶ 21. Our supreme court has held that a prosecutor's remarks during summation "actually quoting the testimony of appellant taken from the record . . . do[es] not constitute error . . . [and is] entirely proper." Crenshaw v. State, 513 So.2d 898, 900 (Miss.1987). Our review of the trial transcript reveals that the prosecutor paraphrased, nearly quoting, Moss' own *1212 testimony regarding his prior convictions. After Moss testified regarding his prior convictions, the prosecution was entitled to mention the convictions during summation. We cannot find that the trial court's affirmance of the prosecutor's use of this testimony during summation was improper. This issue is without merit.
C. Limiting Instruction
¶ 22. After Moss' prior convictions were disclosed to the jury, neither the government nor the defense offered a limiting instruction regarding the jury's use of Moss' prior conviction evidence in deciding Moss' guilt and none was given. Moss now argues that the trial court's failure to sua sponte give the jury a limiting instruction on the use of his prior convictions in their deliberation of his guilt contributed to the warranting of a new trial based upon plain error. Our review of the record indicates that Moss never asked for a limiting instruction, even though at one point the trial judge reminded Moss that he would have an opportunity to request a limiting instruction if needed. While we have already found that the introduction of Moss' prior conviction was a product of his own introduction, we find that the merit of this argument also fails.
¶ 23. Mississippi Rule of Evidence 105 provides in pertinent part that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added). The rule requires that the party affected by the introduction of the evidence bears the burden of requesting the limiting instruction. In the absence of such a request, a trial court cannot be held in error. See M.R.E. 105 cmt.
¶ 24. Our supreme court has interpreted Rule 105 to provide that a trial court is not obligated to sua sponte give a limiting instruction regarding the admittance of a prior conviction under Rule 404(b), overruling a line of cases requiring such an instruction. Brown v. State, 890 So.2d 901, 913(¶ 36) (Miss.2004). The court held that Mississippi Rule of Evidence 105 "clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel." Id. As the admittance of evidence of a prior conviction under Rule 404(b) has been analogized to the admittance of such evidence for the purpose of impeachment under Rule 609, Bounds v. State, 688 So.2d 1362, 1369 (Miss.1997), we can find no reason why the same rule should not apply in this instance. Thus, we hold that because the burden to request a limiting instruction falls upon defense counsel in the admittance of 404(b) evidence, the burden falls upon defense counsel to request a limiting instruction in the context of the admittance of prior convictions through impeachment under Rule 609.
¶ 25. Moss did not request such a limiting instruction and is barred from bringing the issue to us on appeal. The trial judge was not obligated to provide a limiting instruction sua sponte regarding the admission of Moss' prior convictions. Thus, we cannot find error in the trial court's omission to provide a limiting instruction regarding Moss' prior convictions. Accordingly, we do not find that the failure to provide the jury with a limiting instruction attributes to a reversal based upon plain error.
D. Plain Error
¶ 26. Although Moss admits that no contemporaneous objection was made to the introduction of the evidence concerning his prior convictions and there was no *1213 limiting instruction proffered, he argues that notwithstanding the lack of objections, he is entitled to a new trial because of plain error. Moss argues that plain error occurred at trial when the trial judge failed to perform an on-the-record balancing test that the probative value of prior conviction evidence outweighed the prejudice of such evidence.
¶ 27. A contemporaneous objection must be made when a witness gives objectionable testimony so that the trial judge has the opportunity to correct the error and properly instruct the jury. Wells v. State, 903 So.2d 739, 742 (Miss. 2005) (citing Ballenger v. State, 667 So.2d 1242, 1272 (Miss.1995)). Failure to raise a timely objection constitutes waiver of the issue on appeal. Id. "[A] party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001) (citing Foster v. State, 639 So.2d 1263; 1288-89 (Miss.1994)). Only an error so fundamental that it creates a miscarriage of justice rises to the level of plain error. Dixon v. State, 953 So.2d 1108, 1116(¶ 22) (Miss. 2007). Error is plain when it violates the substantive rights of a defendant. Id.
¶ 28. As we have found supra, the testimony regarding Moss' prior convictions came directly from his own mouth while on the stand. Nothing in the record indicates that the prosecution improperly elicited such testimony. That being said, in this case, we cannot impose a requirement on a trial judge to foresee the introduction of evidence regarding prior convictions and perform a balancing test before allowing the introduction of such. We can find no plain error. This issue is without merit.
E. Ineffective Assistance of Counsel
¶ 29. Moss claims that his counsel's, failure to object to the introduction, of his prior convictions and failure to request a limiting instruction regarding the jury's use of this evidence amounts to ineffective assistance. He argues that had his lawyer objected properly, this objection would have triggered the trial court to perform a balancing test to determine whether to admit the evidence. Moss points out that, at the minimum, the issue of the admittance of his prior convictions should have been preserved for appeal. He asserts that his counsel's omission to act in these instances warrants reversal of his conviction and a new trial. The State argues that Moss' counsel's failure to object and request a limiting instruction may have been part of his trial strategy. Once Moss testified to the prior convictions, the State suggests that his counsel chose not, to request a limiting instruction for the purpose of reducing any further attention to the matter.
¶ 30. Claims of ineffective assistance of counsel are reviewed by using the familiar two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Moss has the burden of proof to show by a preponderance of the evidence that (1) his counsel's performance was deficient, and (2) that the deficiency did, in fact, prejudice the defense's case so as to prevent a fair trial. Id.; Hall v. State, 735 So.2d 1124, 1127(¶ 6) (Miss.Ct.App.1999). In determining whether the first prong of Strickland concerning counsel's performance has been satisfied, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The second prong of the Strickland test requires *1214 that Moss prove prejudice by showing that there was a reasonable probability that but for counsel's errors, the trial court's result would have been different. Id. at 699, 104 S.Ct. 2052. Whether the prongs of this test are met is determined by an examination of the totality of the circumstances. Id.
¶ 31. We find no error in Moss' attorney's decision not to object. Moss' prior convictions surfaced as a product of his impeachment regarding his assertions of the ongoing, consensual sexual relationship with V.M. "Failure to raise meritless objections is not ineffective lawyering:" Hodges v. State, 912 So.2d 730, 761(¶ 57) (Miss.2005) (quoting Brown v. State, 798 So.2d 481, 494(¶ 15) (Miss.2001)). Decisions to make particular objections fall within the purview of the attorney's trial strategy and "cannot give rise to an ineffective assistance of counsel claim." Carr v. State, 873 So.2d 991, 1003(¶ 27) (Miss. 2004).
¶ 32. We are also mindful that counsel's decision whether to request a limiting instruction regarding a part of the evidence against the accused may also be a part of trial strategy. Our supreme court has pointed out that a limiting instruction "can actually focus the jury's attention on sensitive information" Sipp v. State, 936 So.2d 326, 331(¶ 9) (Miss.2006) (citing Brown, 890 So.2d at 913(¶ 35)). We have held that a lawyer's failure to request such a limiting instruction as a tactical decision does not amount to ineffective assistance. Hill v. State, 749 So.2d 1143, 1151(¶ 20) (Miss.Ct.App.1999). Moss' arguments did not meet the first prong of the Strickland test, as his counsel's performance was not deficient. Therefore, we decline further review of the issue.
III. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT HIS MOTION FOR A NEW TRIAL ON THE GROUNDS THAT THE WEIGHT OF THE EVIDENCE WAS SUCH THAT THE APPELLANT SHOULD NOT HAVE BEEN CONVICTED OF AGGRAVATED ASSAULT AND RAPE?
¶ 33. Moss moved the lower court to grant him a new trial, but his motion was denied. He appeals the denial of his motion for a new trial, arguing that the lower court erred because the verdict was contrary to the weight of the evidence before the jury to convict him of aggravated assault and rape. Moss argues to this Court that because V.M. did not testify as to the exact type of knife used to cut her neck and a knife was not entered into evidence at trial, the evidence against him was weak, holding insufficient weight for conviction. He further argues that part of V.M.'s testimony regarding her phone call to her boyfriend after the attack is contradictory.
¶ 34. Motions for a new trial challenge the weight of the evidence presented to the jury, and we will only reverse if we find that the lower court abused its discretion in denying the motion. Dilworth v. State, 909 So.2d 731, 737(¶ 20) (Miss.2005). In our review of a trial court's denial of a motion for a new trial, we consider the evidence in the light most favorable to the verdict and will only grant a new trial in exceptional cases where the evidence preponderates heavily against the verdict. Bush, 895 So.2d at 844(¶ 18). The verdict will stand unless an unconscionable injustice would result. Id.
¶ 35. At trial, the State put forth testimony from several witnesses, as well as introduced photographic evidence. V.M. testified that Moss raped her, during *1215 which time he held a knife at her throat, threatening to kill her. V.M.'s boyfriend, boss and cousin testified regarding their observation of V.M.'s physical cuts the day after she alleged she was attacked by Moss. Photographs were introduced showing V.M.'s cuts and bruises taken after she alleged that Moss raped her at knifepoint. Other photographs were introduced depicting the scene where V.M. alleged the attack occurred, showing blood stains located on a pillow in her home and her dress.
¶ 36. The jury sits as the factfinder and determines the credibility of the witnesses and gives value to the weight of the evidence against the accused. Ward v. State, 881 So.2d 316, 323(¶ 31) (Miss.Ct. App.2004). In this case, the jury considered the evidence and returned a verdict against Moss. In viewing the evidence in the light most favorable to the verdict, we find that a reasonable juror could have found Moss guilty of aggravated assault and rape based on the evidence presented. Therefore, the verdict was not so contrary to the weight of the evidence or manifest error so that to allow it to stand would sanction an unconscionable injustice, which is the standard required for this Court to disturb the jury's verdict on appeal. We, therefore, affirm the decision of the lower court denying Moss' motion for a new trial.

CONCLUSION
¶ 37. We. hold that the court did not err in admitting V.M.'s prior consistent statements, as they were relevant, nonhearsay statements that were admissible pursuant to Mississippi Rule of Evidence 801(d)(1)(B). We further find that the issue of the admittance of Moss' prior convictions is procedurally barred; however, the issue lacks merit, as well. The trial court did not err in denying Moss' motion for a new trial, as the weight of the evidence was sufficient to support the conviction of aggravated assault and rape. Accordingly, we affirm the conviction and sentence of Moss.
¶ 38. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I-AGRAVATED ASSAULT AND SENTENCE OF LIFE AND COUNT II-RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND SHALL NOT BE CONSIDERED FOR ANY TYPE OF EARNED RELEASE PROGRAM, PAROLE, PROBATION, PRS OR ANY OTHER FORM OF EARLY RELEASE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY,
LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, C.J.
IRVING, J., Dissenting:
¶ 39. I cannot agree with the majority that the testimony of V.M.'s boyfriend, boss, and cousin was properly admitted or that the admission of the testimony was harmless error. Therefore, I dissent.
¶ 40. The challenged testimony was these witnesses' testimony that V.M. confided in them within twenty-four hours after the attack that she had been raped. The majority finds that this testimony was admissible under Rule 801(d)(1) of the Mississippi Rules of Evidence, which reads:
A statement is not hearsay if:
The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath *1216 subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him;. . . .
¶ 41. More specifically, the majority finds that the testimony was admissible under subsection (B), that is, that the testimony was offered to "rebut an express or implied charge . . . of recent fabrication" by V.M. that she was raped.
¶ 42. With respect, I must say that this is a misapplication of the rule. First, there is nothing in this record even remotely suggesting that Moss ever alleged or charged that V.M.'s rape complaint was one of recent fabrication. Indeed, no such allegation could be made because V.M. made the rape allegation to authorities within twenty-four hours of the occurrence of the incident. In discussing this requirement, the majority cites to Moss's pretrial motion seeking permission to introduce testimony regarding the prior sexual history between him and V.M. In that motion, styled "Motion for Introducing Evidence of Sexual Conduct of Complaining Witness," Moss alleged (1) that he had had a prior sexual relationship with V.M., (2) that on numerous occasions he had been dropped off at V.M.'s house by friends who would come back later and pick him up, (3) that on each of the occasions when he was dropped off he had consensual sexual intercourse with V.M., (4) that on the day in question he had had consensual sexual intercourse with V.M. and was picked up later at V.M.'s house by some friends, and (5) that V.M. did not mention to them that she had been raped, waiting instead until the next day to make the charge.
¶ 43. It is obvious that the purpose of Moss's motion was to comply with the requirements of Rule 412 of the Mississippi Rules of Evidence, which prohibits generally the admissibility of evidence of the past sexual behavior of a victim of a sex crime. The rule also provides the procedural framework for obtaining court permission for the admission of evidence regarding past sexual behavior by the victim with the accused when the accused's defense is that the victim consented to the current sexual behavior for which the accused is being tried.
¶ 44. Under the majority's construction of Rule 801(d)(1), statements made outside of a court proceeding by a rape victim attesting to others that she has been raped will always be admissible when an accused's defense is consent and he seeks to support that defense by showing prior consensual sexual relations between him and the victim, regardless of whether there has been an allegation of recent fabrication. This is so because in every such defense, before the accused may offer testimony regarding the prior consensual sexual activity between him and the victim, he must file a written motion to offer such evidence at least fifteen days before trial. M.R.E. 412(c)(1). Obviously, in such a motion the accused will charge that the victim is fabricating the rape accusation, although the alleged fabrication may not necessarily be of recent origin. This is exactly the case here.
¶ 45. V.M.'s testimony concerning her activities prior to and after the rape raises serious questions regarding her assertion that she did not consent to the sexual relations between her and Moss. It is abundantly clear from reading her testimony that reasonable jurors could find her testimony incredible in several critical aspects since she admitted she had had a past girlfriend-boyfriend relationship with *1217 Moss.[2] She described their relationship at the time of the incident as friends. Therefore, testimony that she had told others right after the incident that she was raped could help overcome her trial credibility problems. In my judgment, that was the sole purpose of offering the testimony of her boyfriend, boss, and cousin. Rule 801(d)(1) does not lend itself to be used in this manner.
¶ 46. Finally, I cannot agree with the majority that admission of these witnesses' testimony was harmless error, given the credibility problems that are clearly evident with V.M.'s testimony. To illustrate my point, I cite some examples of V.M.'s testimony that I believe a jury could find problematic.
¶ 47. First, according to V.M, it had been approximately ten years since she and Moss had dated (she was twenty-seven at the time of trial). She offered no explanation why, after such a long gap in time, Moss would suddenly show up at her house, without an invitation, on the Fourth of July when she and two other males (a cousin and a friend) were just sitting around talking. More importantly, she did not explain why she instructed her male friends to unlock the gate and allow Moss to join them.[3] For approximately two hours, V.M., Moss, and her other friends sat around at her house, engaging in friendly talk. Things got a bit strange after V.M.'s cousin and friend left.[4] Aside from letting them leave her there' alone with Moss, she even allowed Moss to help her cover her patio chairs. It is after Moss assisted her with the covering of the chairs that I find V.M.'s testimony to be a bit confusing, to say the least:
A. Well, I started putting my patio chairs, the covers back up on. He helped me do that. Once I got out the gate, I didn't lock my gate, because I had to come back and get my dog.[5] So he proceeded to leave.
Q. Okay. Now, where did he leave from?
A. He 
Q. Go ahead. Where did he leave? How did he leave?
A. He left when  I went  he had a cup in his hand and he went on the front porch with me. He was throwing the cup away. And from there, he was supposed to leave. I thought he was gone.
Q. Okay. I am trying to make sure that I have a clear understanding of how your home is laid out. You have a front door, I assume?
A. Yes.
Q. And you have a back door where this patio is?

*1218 A. No, it's not like that. I have a  it's an outside gate. It's separate. It's not connected to my home. It's not connected around my home. So you have to  I have two doors on that gate. The door closest to my home is the door we are entering in and out. Still you have to come up, walk on my car porch to go on my car porch.
Q. Where is your patio, at the back of your house?
A. On the side of my house.
Q. And your porch is on the front of the house?
A. Yes.
Q. Which exit did Robert use?
A. The exit from which end?
Q. How did he leave your home?
A. He exited out that gate [door?] on to the porch, and then he was supposed to leave out the front door [gate?].

Q. Okay. So he was at the front door?
A. Yes.
Q. Now, where  okay. You walked him to the front door, I assume?
A. No. I just told him: Okay, I will see you later.
Q. He threw the cup away and proceeded towards the front?
A. Yes.
Q. What did you do?
A. went out the back door to get my dog in.

* * *
Q. Okay. Tell us what happened. Did you get the dog in?
A. Yes. Actually how I did it, I opened my door. I have steps. I may have about five or six steps. The dog was right there by the tree, chained to a long tree. Kantwon [the dog] comes to me. I unlatch it. I had a foot on the step and a foot on the ground, so I am just hanging out the door. As I proceed, I don't have to hold my dog or anything. He runs back in the house, and he runs through every room. As I was proceeding to turn around, that is when Robert Moss grabs me from behind. He is pressure cutting me. How he grabbed' me first is a pinpoint, you know.
¶ 48. It is apparent that V.M. gave contradictory testimony about the location of the dog. At one point, she suggests that her dog was outside the gate through which Moss was supposed to have exited when he came out her front door. That was the front gate, yet she later testified that she went to the back door to get her dog in and did not mention having to go out a gate. Additionally, it seems strange indeed that her dog apparently remained silent while she was being attacked by a stranger.
¶ 49. During cross-examination, V.M. testified that she talked to Moss about thirty minutes after the attack, trying to assure him that she was not going to tell anyone. However, immediately after he left, she drove to the Stonewall Police Department to report the incident. No one was there, so she drove to where she worked, the Super Stop. She explained that she went there because sometimes the police park there. Finding no police officer there, she returned home, going first to her grandmother's house to use the telephone to call her boyfriend in Meridian. She explained that she went next door to her grandmother's house to use the telephone because she could not call Meridian, which is twenty-three miles from Stonewall, on her telephone. Presumably, V.M. was referring to her home telephone. *1219 Nevertheless, her testimony on this point is also confusing:
Q. Okay, And why didn't you use your own phone?
A. I couldn't call Meridian on my phone. I don't have  didn't have area calling.

Later, during cross-examination, she gave this testimony:
Q. And I think you testified earlier it doesn't go outside of Clarke County, it's basically just 
A. Area calling, yes.

¶ 50. As reflected in the quoted passages, V.M. initially said she did not have area calling on her telephone but later attested that she did. More importantly, V.M. offered no explanation as to why she could not have called her boyfriend on her cellular telephone, as the record reflects that she had one. She even testified that her boyfriend called her on it and that she called him on it the morning after the attack.
¶ 51. Perhaps the strangest aspect of V.M.'s testimony is her explanation of why she did not call or drive the five miles to the Clarke County Sheriffs Department in Quitman to report the incident. She explained that she was too afraid because Moss had threatened to kill her. Yet, she was not too afraid to drive the twenty-three miles to Meridian to see her boyfriend around 3:00 a.m. When she got to Meridian she did not tell her boyfriend about the attack[6] or report the incident to the Meridian Police Department, even though her boyfriend could have accompanied her to the Meridian Police Department. Giving V.M. the benefit of the doubt and assuming that she was too afraid to drive to either the Clarke County Sheriff's Department or the Meridian Police Department, she offers no explanation as to why she could not have just called 911. Calling 911 would have made it unnecessary for her to risk driving to any of law enforcement agencies, even to the. Stonewall Police Department to which she admitted driving.
¶ 52. Finally, I should point out that when V.M.'s boyfriend was alerted to what had allegedly happened, she testified that he tried to get her to go to the police department to report the incident but that she refused because she had to go to work. When the boyfriend told her that if she refused to report the incident to the police, he was going to call them himself, V.M responded that she was not going to report it "because the police is not going to do anything. They are not going to do anything." This position seems strange indeed for V.M. who, according to her testimony, only hours earlier had gone to the police department to report the incident.
¶ 53. Based on these facts, I cannot agree that it was harmless error to allow V.M.'s boss, boyfriend, and cousin to tell the jury that she informed them, within thirty-six hours of the incident, that she had been raped. I would reverse and remand for a new trial without this testimony.
KING, C.J, Joins this Opinion.
NOTES
[1] Initials are being used to ensure the victim's privacy.
[2] She dated him when she was sixteen or seventeen or when she was sixteen, as well as when she was seventeen. During direct examination, she testified that she dated Moss in "1994, '95." However, during cross-examination, she vacillated on the period of time that she dated Moss, saying initially, "maybe a couple of months" and then at another point saying, "I don't know how long it was. Probably not even a good month or so."
[3] I accept that members of Generations X and Y may not find this, and some of the later episodes, unusual. However, members of the jury are not limited to such generations.
[4] Her friend, Lionel Moore, left first around 11:00 or 11:15 p.m. Her cousin, Derrick, left about 11:30 p.m. or 12:00 a.m. V.M. testified that Moss was there when Lionel left and that Moss was going in and out (meaning leaving her house, staying gone for a while and then returning).
[5] Previously during the trial, V.M. had testified that she opened the gate near the patio to allow Derrick to leave and that she proceeded back to where Moss was to tell him that she "was getting ready to go in the house and get ready for work for the next day."
[6] V.M. testified that she got in the bed with her boyfriend but that they did not have sex. She testified that she left at 8:00 a.m., leaving her boyfriend asleep. According to her, she did not have to be at work until 1:00 p.m.