### WARREN v. STATE.

(Division B.    Nov. 7, 1938.)

[184 So. 324.    No. 33478.]

**J. B. Hillman**, of Philadelphia, and **Howie, Howie & McGowan**, of Jackson, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the State.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Jimmie Warren, was indicted for murder for the killing of Walton Moore in Newton county, Mississippi, and on trial was convicted of manslaughter, and sentenced to twelve years in the penitentiary. It appears that on an evening in April, 1937, the appellant and his co-indictee, Earl Chesney, and W. E. Collins, started to a party or dance at the home of Bob Skinner, near Little Rock, Mississippi, driving Jimmie Warren's car, which broke down at Little Rock. Just then the deceased and several others came by, asked them to get in their car, and took them on to Skinner's residence, where some of the party danced for a while, and then went in the car up on the hill above Skinner's residence, where they got out and took several drinks of corn beer from containers in the possession of the Moores. After taking several drinks of this beer, Moore and his companions went back to the car, and the appellant and Chesney started back toward Skinner's house. When the Moores reached their car they decided to return and get the remainder of the beer, which had been left in the woods nearby. Failing to find it, they accused the appellant and Chesney of taking it, which they denied—to which Moore replied that they must have taken it; there was nobody else to get it. The appellant told him that he did not like what he said, and Walton Moore said he did not have to take it; whereupon the appellant struck Moore about the upper part of the shoulder, near the neck. Moore then knocked the appellant down, got on top of him, and according to some of the evidence was beating him, when the appellant cut Moore on the leg twice. Moore hallooed out, "He has a knife and is

cutting me!'' or words to that effect; Chesney rushed up and tried to strike Moore, but was intercepted by Moore's brothers; and they then pulled Moore off, and took the appellant's knife. After this the appellant and Chesney walked off down the road. Moore died within a few minutes. It was found that he was cut twice in the leg, between the knee and body, and was stabbed about where the shoulder joins the neck. The latter wound bled profusely, resulting in his death in a short while. Moore's companions took him to Union, to get the aid of a physician, hoping to save his life, but when they reached Union he was dead.

The sheriff's office was informed of the killing at about midnight of the evening on which it occurred around 10 o'clock; and the sheriff and deputy sheriff tried to find the appellant and Chesney that night, and throughout the morning hours, finally locating them late in the afternoon of the day following. They were placed under arrest, the appellant admitting that he cut the deceased, and on being informed of his death—which he had not theretofore known—he stated that he did it, that all he wanted was a fair deal.

Beside the appellant and the deceased, there were four parties present throughout the difficulty, who testified substantially to what has already been stated. They could not see the knife in the hands of the appellant, it being, according to the evidence, a moonless or starlit night.

The sheriff, after arresting appellant and Chesney, took possession of the appellant's knife, and on finding that Chesney had a knife, also took it.

It appears that there had been a former trial of the case, on which trial one Rudolph Dallas, one of the parties present at the time of the difficulty, testified as a witness. Shortly before the present trial the appellant went to see Dallas, and according to the latter's testimony, stated that they had always been friends; and asked if he, Dallas, could not help him. Dallas, accord-

ing to his testimony, replied that if the truth would help him he could; whereupon the appellant told Dallas that on the former trial he had stated as facts that which was not true. Dallas claims to have denied this, whereupon the appellant struck at him, but did not hit him. This evidence was offered by the state when Dallas was on the stand, was objected to, and assigned for error. The state also secured an instruction, which is assigned for error, to the effect that if there was a conspiracy or agreement between the appellant and Chesney to assault the deceased, that the appellant was guilty, even though Chesney should have inflicted the fatal wound,—or to that effect.

In regard to the transaction between Dallas and the appellant, in which the appellant struck at Dallas, and accused him of making statements which were untrue, it is objected that this is a different offense, having no connection with, and subsequent to, the killing; that it was prejudicial, and for that reason the cause should be reversed. It appears to us that the evidence was competent for the purpose of showing that the appellant, an interested party, was trying to prevent Dallas from testifying to what Dallas conceived the truth to be, or from testifying to the facts to which he had testified on the former trial; and that his assault on Dallas was an attempt to intimidate a material witness, and prevent his testifying to his conception of the truth.

We think the dispute and assault came about by reason of the transaction for which the appellant was tried, and was calculated to influence the witness, either by persuasion or coercion, from testifying in the case for which the appellant was shortly to be tried. In other words, it was an attempt to suppress material evidence at the approaching trial, and could be shown as a material fact at that trial. At least, there was no reversible error for which the cause could be reversed.

In regard to the instruction, there is no proof here from which it can be reasonably inferred that Chesney

struck the fatal blow. No witness stated that he did, though it was stated that he attempted to strike Moore, which he denied. It appears that the knife with which the wound was inflicted belonged to the appellant, who admitted the cutting, although he denied using the knife prior to the time the deceased knocked him down; and stated that he thought the deceased was cutting him when he cut the deceased.

The appellant was not injured by this instruction, because all the proof shows that he was the person who did the cutting. Consequently, we will not reverse on that account.

On the facts in the record, it appears that the twelve-year sentence was rather severe; but the trial judge, in passing sentence, has the advantage of knowing the situation, being aware of what is called the atmosphere of the case, and the requirements of the community; and the law has committed to him the fixing of the punishment, so long as it does not amount to cruel and unusual punishment.

We are, therefore, unable to reverse the case, and the judgment is affirmed.

Affirmed.